UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAROON A-RASHID RA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:23-cv-134-GMB |
| ) | |
| JIMMIE HALE MISSION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM OPINION**

Plaintiff Haroon A-Rashid Ra filed a *pro se* complaint against his former employer, the Jimmie Hale Mission ("Jimmie Hale"), alleging disparate treatment because of his race in violation Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. Doc. 1-1 at 3–4. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9. Before the court is Jimmie Hale's Motion for Summary Judgment. Doc. 17. The motion has been fully briefed (Docs. 18, 20, 22) and is ripe for decision. For the following reasons, the motion for summary judgment is due to be granted.

### **I. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The purpose of summary judgment is to

separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). On the other hand, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## II.  RELEVANT FACTUAL BACKGROUND

Jimmie Hale is a Christian-based, nonprofit organization that provides a wide range of free services and support to individuals struggling with homelessness, poverty, and addiction. Doc. 18-2 at 3.  Haroon A-Rashid Ra, who is biracial, is a

3

former employee[1] of one of Jimmie Hale's facilities—the Shepura Men's Center, a homeless shelter in Birmingham, Alabama. Doc 18-2 at 3.

**A.   Ra's Work History, Discipline, and Performance Evaluations**

Ra began his employment as a Resident Assistant on December 12, 2013,[2] sometime after he had successfully completed Jimmie Hale's recovery program. Doc. 18-2 at 3.  His duties included security and assisting Jimmie Hale's clients as needed. Doc. 18-3 at 2.

On September 26, 2020, a white co-worker, Anthony Taylor, saw Ra taking boxes of donated shoes without authorization. *See* Doc. 18-5 at 2.  Taylor reported him. Docs. 18-4 at 2 & 18-5 at 2.  On October 9, 2020, Sharon Fussell, a Black woman who was the Director of Human Resources at the time, and Demetrius Vines, Ra's director, met with Ra about the theft. Doc. 18-5 at 2.  Ra admitted to taking the shoes and received a written warning. Doc. 18-4 at 2; Doc. 18-5 at 2.

During the meeting, Fussell and Vines "instructed [Ra] not to confront or retaliate against" Taylor. Doc. 18-5 at 2.  Ra voiced concerns about Taylor and complained about a confrontation between Taylor and a Jimmie Hale client that

---

[1] Ra stopped showing up for work after he filed his complaint.  Once he exhausted his sick leave and vacation days, Jimmie Hale notified him that his employment was terminated due to abandonment. Doc. 18-2 at 6–7; Doc. 18-3 at 2–3; Doc. 18-14 at 2.  Ra does not complain about his termination.

[2] Ra states in his brief that his employment began on December 12, 2019 (Doc. 20 at 1), but he listed 2013 as the year he began his employment on his application for the Kitchen Supervisor position. Doc. 18-7 at 2.  Regardless of this discrepancy, the year of Ra's initial employment is not material to the motion for summary judgment.

occurred when Taylor was a client and not an employee. Doc. 18-5 at 2. Fussell and Vines offered Ra the opportunity to meet with them and Taylor about his concerns, but Ra declined. Doc. 18-5 at 2.

The next day, Vines spoke with Ra about his relationship with Taylor. Doc. 18-5 at 2. Ra stated that he and Taylor talked, worked everything out, and both were fine. Doc. 18-5 at 2. However, a few days later, Fussell learned that Ra had "been going around campus asking staff members and clients about an incident involving Taylor when he was a client." Doc. 18-5 at 2. Around the same time, Ra sent an email to Fussell requesting an investigation of Taylor and stating that he "was scared and taking a sick day and [he did] not feel good at all working with Anthony Taylor." Doc. 18-5 at 2.

Fussell met with Ra and investigated his allegations about Taylor. Doc. 18-5 at 2–3. Both Ra and Taylor were given warnings for their "failure to improve [their] working relationship and making disparaging remarks about each other to clients and staff." Doc. 18-5 at 3. Because this was Ra's second warning, Fussell cautioned him that his failure to "make every effort to work cohesively with Mr. Taylor" would result in stronger disciplinary action. Doc. 18-5 at 2. Fussell also met with Ra and Taylor in an attempt "to bridge [their] working relationship." Doc. 18-5 at 2.

In March 2022, Ra received a performance evaluation.[3] Doc. 18-10 at 2–4.

---

[3] The record does not identify the evaluator. *See* Doc. 18-10.

When asked to describe any obstacles or challenges that impacted Ra's ability to his achieve goals or meet expectations, the reviewer stated that his "major obstacle is his attitude concerning using his sick days as if they were vacation days. Haroon routinely . . . calls in at the last minute and takes nights off that just happen to coincide with his days off." Doc. 18-10 at 3. The evaluation also mentioned that Ra needed "development" and "more dedication and consideration in attendance," and it did not recommend him for a promotion. Doc. 18-10 at 3–4.

**B.     Kitchen Supervisor Position**

In February 2022, the Kitchen Supervisor resigned. Doc. 18-2 at 3. Jimmie Hale posted the position and moved Taylor into an Interim Kitchen Supervisor role since he previously worked in the kitchen and had some familiarity with the duties. Doc. 18-2 at 3. The job posting listed these duties for a Kitchen Supervisor: "oversees, directs, supervises, and maintains all aspects of the kitchen operation to include budgeting, preparing and managing employee scheduling, ordering food/supplies, and ensuring nutritional food planning and preparation program that focuses on quality and variety." Doc. 18-6 at 2. The minimum skills and qualifications were a "high school diploma or equivalency with knowledge of food preparation and supervisory experience," "understanding of how to effectively utilize the Birmingham Food Bank," "proficiency in food services, budgeting and management," and "ServSafe certified." Doc. 18-6 at 2.

Ra applied for the position on March 11, 2022. Doc. 18-7 at 2–4.  He had never worked in the kitchen at Jimmie Hale, nor did he disclose any kitchen-related work experience.[4] Doc. 18-7 at 2–4; Doc. 18-2 at 5.  Four other Jimmie Hale employees, including George Underwood, a white man, applied for the position. Doc. 18-2 at 4.  In the meantime, Taylor requested to return to his former position as a Recovery Coach and told Jimmie Hale that he would not apply for the Kitchen Supervisor position. Doc. 18-2 at 4.

Jimmie Hale interviewed all applicants for the Kitchen Supervisor position during April 2022. Doc. 18-2 at 4.  The interview panel consisted of James Poe, a white man and the Director of the Shepura Men's Center; Charles Williams, who is Black and the Director of Operations for Jimmie Hale; and Fussell. Doc. 18-2 at 4, 5.  After the interviews and a review of the applicants' resumes, performance evaluations, and work experience, the panel selected Underwood for the position. Doc. 18-2 at 4–5.  The panel stated that it chose Underwood based on "job performance in [his] current position, experience in [a] kitchen, and in-person interview." Doc. 18-9 at 2.  Underwood's resume included more than a year of experience in a kitchen and previous management of a restaurant. Doc. 18-8 at 3; Doc. 18-9 at 3.  He had a college degree, was "computer proficient," and had a good

---

[4] In his opposition brief, Ra states without explanation that he "express[ed] past kitchen experience." Doc. 20 at 2.  His application did not list any experience in a kitchen or restaurant. Doc. 18-7 at 2–4.

7

attendance record. Doc. 18-9 at 3.  In addition, Underwood worked in the Jimmie Hale kitchen for almost two years and "experienced every aspect of the duties of Kitchen Supervisor besides actually entering the numbers to order Sysco Food Services." Doc. 18-8 at 4.  Underwood had never received any disciplinary action or written warnings while employed at Jimmie Hale. Doc. 18-2 at 6.

**C.     EEOC Charge**

Ra filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Jimmie Hale on September 26, 2022, claiming discrimination on the basis of his race. Doc. 18-11 at 2.  In full, Ra alleged:

> I am an individual of mixed races. I was hired by [Jimmie Hale] approximately on December 13, 2012, as a Resident Assistant. I perform my job in a satisfactory manner.  I have applied multiple times for the promotional position of Kitchen Supervisor.  I applied on approximately March 29, 2022.  I was not selected for the position.  Mr. Hank Underwood, White[,] was the successful candidate.  I believe Mr. Underwood socializes with James Poe, Director outside of work. I believe I have been discriminated against due to my race, Mixed, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. 18-11 at 2.  Ra identified the date range of the discrimination as April 1, 2022, through April 1, 2022. Doc. 18-11 at 2.  The EEOC issued a Determination and Notice of Rights letter to Ra on October 3, 2022. Doc. 18-12 at 2. He filed his federal complaint 90 days later. Doc. 1-1.

### III.  DISCUSSION

Ra's *pro se* complaint alleges a Title VII claim for race discrimination.

8

Doc. 1 at 3–7. Specifically, Ra contends that Jimmie Hale discriminated against him within "the last two years" when it "decline[d] [him] promotions" and when it hired two white men "with less experience, and substance abuse issues." Doc. 1-1 at 3. Jimmie Hale moves for summary judgment. Doc. 19. For the following reasons, summary judgment is due to be granted.

**A.     Failure to Exhaust Administrative Remedies**

The starting point for any judicial complaint of employment discrimination is the underlying administrative charge and investigation. *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985). Before filing a Title VII action, "a plaintiff first must file a charge of discrimination with the EEOC." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)). The timely filing of an EEOC charge within 180 days of an alleged discriminatory act is a condition precedent to bringing suit under Title VII. 42 U.S.C. § 2000e–5(e)(1). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)) (alteration in *Gregory*). The Eleventh Circuit "has noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC

complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." *Id.* at 1279–80 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

"In light of the purpose of the EEOC exhaustion requirement," the Eleventh Circuit has held that "a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Gregory*, 355 F.3d at 1280 (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). "To determine whether a plaintiff has exhausted h[is] administrative remedies, then, the 'proper inquiry' is whether the '[plaintiff's] complaint is like or related to, or grew out of, the allegations contained in [the] EEOC charge.'" *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (quoting *Gregory*, 355 F.3d at 1280).

Ra's complaint alleges that Jimmie Hale discriminated against him when it denied him promotions during the last two years, and his brief in opposition to summary judgment also mentions other events that occurred in 2020 and 2021. *See* Doc. 1-1 at 3; Doc. 20. But when Ra filed his EEOC charge, he identified April 1, 2022, as the only date on which discrimination occurred. Doc. 18-11 at 2. And his charge alleged one discrete incident of discrimination—the Kitchen Supervisor promotion decision made in April 2022. Doc. 18-11 at 2. For this reason, any other promotion decision is not exhausted, and any claims related to other promotions and

other events are due to be dismissed. The court now turns to Ra's sole exhausted claim.

## B. Kitchen Supervisor Promotion

Under Title VII, "it [is] unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1288 (11th Cir. 2003) (quoting 42 U.S.C. § 2000e–2(a)(1)). Absent direct evidence of discrimination, a plaintiff may prove his case through circumstantial evidence using the framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id*. After the *prima facie* case, the employer has the burden to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id*. After it does so, the burden shifts back to the plaintiff to show that the proffered reason was a pretext for illegal discrimination. *Id*. Although the burden of production may shift, the ultimate burden of persuasion remains with the plaintiff. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).

The *McDonnell Douglas* framework is not the only way for a plaintiff to

survive summary judgment in a discrimination case. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Rather, "[t]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id*. A triable issue of fact exists when the record, viewed in the light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. *Id*.; *see generally Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

Regardless of the method, Ra has not established a triable issue of Jimmie Hale's discriminatory intent in the promotion decision. Jimmie Hale asserts that it chose Underwood over Ra because he was more qualified to serve as the Kitchen Supervisor in that he had more experience (including previous work in the Jimmie Hale kitchen), good attendance, and superior job performance without discipline. Ra has not presented any evidence from which a jury could infer that this reason was false or a pretext for discrimination. He also has failed to present any other evidence of intentional discrimination in the decision.

In opposition to summary judgment, Ra makes two arguments. First, he contends that one of the panel members, Poe, had a personal relationship with Underwood since they play golf together. Doc. 20 at 5. In other words, he contends that Poe showed favoritism toward his friend. This argument does not present

circumstantial evidence of race discrimination sufficient to create a triable issue of fact. While Poe might have a friendly relationship with Underwood outside of work, he was only one of the three panel members who made the promotion decision. And more fundamentally, friendship between a candidate and decisionmaker does not prove discriminatory intent. *Cf. Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 (11th Cir. 1990) (quoting *Holder v. City of Raleigh*, 867 F.2d 823, 825–26 (4th Cir. 1989) ("'A racially discriminatory motive cannot, as a matter of law, be invariably inferred from favoritism shown on the basis of some family relationship.'"); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986) (holding that decisions motivated by a personal feud do not support a claim of discrimination).

Second, Ra argues that he was more qualified than Underwood for the position. Specifically, Ra claims that his "9½ years' experience working on American Flag Vessels as an able-bodied Seaman, Deck Hand, Cook, and Oil . . . surpasses Mr. Underwood." Doc. 20 at 6. This argument rings hollow, however, after examination of the undisputed evidence in the record. The evidence establishes that Underwood had years of experience in the food industry, including a position in the Jimmie Hale kitchen for nearly two years, while Ra did not. And the panel noted that Underwood had a good attendance record, while Ra's evaluation criticized him for using his sick days as if they were vacation days. There also is no evidence that Underwood received any disciplinary action while employed with Jimmie Hale,

13

while Ra received at least two warnings.

Regardless, the court should "not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001) (citation omitted).  Here, there is no evidence that Jimmie Hale did not promote Ra because of his race.  At its core, Ra essentially argues that Jimmie Hale made the wrong decision and should have chosen him to be the Kitchen Supervisor.  He does not present any evidence that race played a factor in the decision.  Ultimately, it is not the court's job to decide whether an employment decision is fair or wise, but only whether it is legal. *See Damon v. Fleming Supermkt. of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).  To succeed, Ra must present circumstantial evidence that would allow a jury to infer intentional discrimination. *Berry v. Crestwood Healthcare LP*, __4th__, 2023 WL 7095309, at *7 (11th Cir. Oct. 27, 2023) ("To survive summary judgment, the employee must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful [discrimination] against the employee.") (citing *Lewis*, 934 F.3d at 1185).  Ra has failed to do so.  Therefore, summary judgment is due to be granted on his race discrimination claim.

## IV.  CONCLUSION

For these reasons, Jimmie Hale Mission's Motion for Summary Judgment

(Doc. 17) is due to be granted.  A separate final order will be entered.

DONE and ORDERED on February 29, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE